UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

JAMAAL LEWIS, SR.,

    Petitioner,

v.

HECTOR JOYNER,

    Respondent.

Case No. 7:19-36-REW

MEMORANDUM OPINION
AND ORDER

\*\*\* \*\*\* \*\*\* \*\*\*

Petitioner Jamaal Lewis, Sr., is an inmate at the United States Penitentiary ("USP")-Big Sandy in Inez, Kentucky. Proceeding without an attorney, Lewis filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2241 and has paid the $5.00 filing fee. DE 1. In his § 2241 petition, Lewis seeks relief regarding eligibility for parole.

This matter is before the Court to conduct the initial screening required by 28 U.S.C. § 2243. *Alexander v. Bureau of Prisons*, 419 F. App'x 544, 545 (6th Cir. 2011). A petition will be denied on screening "[i]f it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief." Rule 4, Rules Governing § 2254 Cases in the U.S. Dist. Cts. (applicable to § 2241 petitions pursuant to Rule 1(b)).

**I.**

Before screening Lewis's petition, the Court must address a motion for change of venue filed by Lewis (DE 4). As justification for a new venue, Lewis points to two earlier dispositions: *Lewis v. Joyner*, No. 7:19-cv-24-REW (E.D. Ky. 2019), in which the undersigned dismissed without prejudice Lewis's § 2241 habeas petition for failure to pay the filing fee, and *Lewis v.*

*Kizziah*, No. 7:17-cv-6-KKC, 2019 WL 722569 (E.D. Ky. Feb. 20, 2019), in which then-Chief Judge Caldwell dismissed Lewis's civil-rights complaint filed pursuant to *Bivens v. Six Unknown Federal Narcotics Agents*, 91 S. Ct. 1999 (1971). *See* DE 4. According to Lewis, these prior dismissals merit a "change of venue where he could get a fair/unbiased judgment based on Sixth Circuit precedent." *Id.* Although styled as a motion for change of venue, the substance of Lewis's motion seeks to disqualify the undersigned from ruling on Lewis's petition.

A judge is required to disqualify himself "in any proceeding in which his impartiality might reasonably be questioned." 28 U.S.C. § 455(a). This standard is "not based on the subjective view of a party," *Burley v. Gagacki*, 834 F.3d 606, 615–16 (6th Cir. 2016) (internal quotation omitted), but is instead an objective one, requiring a judge to recuse "if a reasonable, objective person, knowing all of the circumstances, would have questioned the judge's impartiality." *Hughes v. United States*, 899 F.2d 1495, 1501 (6th Cir. 1990) (citations omitted).

Section 455(b)(1) further requires disqualification when a judge "has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455(b)(1). In this context, the words "bias or prejudice" refer to "a favorable or unfavorable disposition or opinion that is somehow *wrongful* or *inappropriate*, either because it is undeserved, or because it rests upon knowledge that the subject ought not possess . . . or because it is excessive in degree." *Liteky v. United States*, 114 S. Ct. 1147, 1155 (1994) (emphasis in original); *see also Williams v. Anderson*, 460 F.3d 789, 814 (6th Cir. 2006). To justify recusal under 28 U.S.C. § 455, "[t]he alleged bias must 'stem from an extrajudicial source and result in an opinion on the merits on some basis other than what the judge learned from his participation in the case.'" *Youn v. Track*, 324 F.3d 409, 423 (6th Cir. 2003) (quoting *United States v. Grinnell Corp.*, 86 S. Ct. 1698, 1710 (1966)).

The Sixth Circuit has cautioned that "[t]here is as much obligation upon a judge not to recuse himself when there is no occasion as there is for him to do so when there is." *Easley v. Univ. of Mich. Bd. of Regents*, 853 F.2d 1351, 1356 (6th Cir. 1988) (internal quotation omitted); *see also Lyell v. Renico*, 470 F.3d 1177, 1186–87 (6th Cir. 2006). And, as the Sixth Circuit noted in *City of Cleveland v. Krupansky*, 619 F.2d 576 (6th Cir. 1980), unnecessary recusals waste judicial resources. *Id.* at 579. Likewise, granting groundless disqualification motions encourages judge-shopping. *See id.*

Here, Lewis proffers no reason why a reasonable, objective person would question the undersigned's impartiality, nor does he make any allegation that the undersigned has knowledge resulting from any extrajudicial activities or exposure to this case. Rather, Lewis argues that the undersigned should recuse because of Lewis's own belief that "either the Court does not know the precedent [of the issues presented in his petition], does not respect it, or will not give the Petitioner a fair and equitable judgment." *See* DE 4. As evidence of the Court's bias, Lewis points only to his dissatisfaction with judicial rulings in his other cases. However, "judicial rulings alone almost never constitute a valid basis for a bias or partiality motion. . . . Almost invariably, they are proper grounds for appeal, not for recusal." *Liteky*, 114 S. Ct. at 1157. While Lewis may disagree with the Court's legal conclusions, the proper method to assert his arguments for a different result—once a final judgment has been entered—is to pursue an appeal, which he did not do in either of his prior cases. The Court has considered the factors under 28 U.S.C. § 455 and determines that recusal is neither required nor warranted.

## II.

Turning to the substance of Lewis's petition, Lewis claims that his current parole-eligibility date, as calculated by the Federal Bureau of Prisons ("BOP"), is incorrect. Lewis first presented

3

his challenge to the BOP's calculation by way of a civil-rights complaint filed in this Court pursuant to *Bivens*. *See Lewis v. Kizziah*, No. 7:17-cv-6-KKC. In that case, then-Chief Judge Caldwell summarized the facts giving rise to Lewis's argument on parole-eligibility calculation:

> On October 6, 2006, Lewis was sentenced by a Department of the Army, General Court-Martial to a life term of confinement with the possibility of parole for his convictions of the following: 1) attempted robbery in violation of 10 U.S.C. § 880; 2) murder in violation of 10 U.S.C. § 918; and 3) aggravated assault with a firearm in violation of 10 U.S.C. § 928. [R. 18, 25-1] While he was serving this sentence, Lewis was again court martialed and sentenced on December 16, 2011 to a 4-year term of confinement for his convictions of: 1) willfully disobeying a superior non-commissioned officer in violation of 10 U.S.C. § 890; 2) mutiny in violation of 10 U.S.C. § 894; 3) damaging military property in violation of 10 U.S.C. § 908; 4) assault and battery in violation of 10 U.S.C. § 928; and 5) kidnapping in violation of 10 U.S.C. § 934. [R. 18-4, 25-1]
>
> Although Lewis began serving his sentence in Army custody at the United States Disciplinary Barracks ("USDB") at Ft. Leavenworth, Kansas, he was transferred to the custody of the federal Bureau of Prisons ("BOP") in July 2012. [R. 18, 25-1] On October 30, 2014, Lewis applied to the United States Parole Commission ("USPC") for an initial parole hearing. [R. 25-1] Lewis states that the BOP initially calculated his parole eligibility date as September 6, 2015, which coincided with his service of 10 years on his life sentence. [R. 18; 25-1 at p. 3] According to Lewis, although he signed paperwork to appear before the USPC, his case manager at FCI-Hazelton did not turn in the paperwork because she did not believe that Lewis' parole eligibility date was correct. [R. 18] According to Defendant's motion, as the USPC prepared to conduct Lewis' parole hearing, a USPC employee contacted USDB to obtain Lewis' records, at which time a USDB employee informed the USPC employee that, because Lewis was serving a life sentence, he should not be eligible for parole until he has served 20 years of his life sentence. [R. 25; 25-1 at p. 11] Thus, according to the USDB employee, Lewis' parole eligibility date should be changed to September 5, 2025. [*Id.*]
>
> Accordingly, the BOP changed its computation to correct Lewis' parole eligibility date to September 5, 2025. [R. 18-4 at p. 4] Lewis claims that the BOP is now wrongfully denying him parole privileges because it is enforcing an allegedly inaccurate parole eligibility date. Lewis filed this lawsuit as a civil rights action seeking declaratory judgment and injunctive relief. [R. 1]

*See Lewis v. Kizziah*, No. 7:17-cv-6-KKC, at DE 31.

In his *Bivens* action, Lewis claimed that the BOP's enforcement of the September 2025 parole-eligibility date violates Lewis's rights under 10 U.S.C. § 858 and 18 U.S.C. § 4205(a). *See*

*Lewis v. Kizziah*, No. 7:17-cv-6-KKC at DE 1; *id.* at DE 18. After being served with a copy of the complaint, Defendant Warden Gregory Kizziah (the former Warden at USP-Big Sandy), filed a motion to dismiss Lewis's complaint pursuant to Fed. R. Civ. P. 12(b), for failure to state a claim. *Id.* at DE 25. Kizziah's motion asserted that, under applicable Department of Defense ("DOD") regulations, Lewis is not eligible for parole until he serves at least twenty years of his sentence; thus he is not entitled to the earlier parole-eligibility date that he seeks. *Id*. After full briefing, Judge Caldwell granted Kizziah's motion and dismissed Lewis's complaint with prejudice. *Id*. at DE 31.

Lewis has now, in essence, re-packaged his previously presented claims as a petition for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2241. DE 1.[1] In his habeas petition, Lewis argues that the BOP is "unreasonably discriminating against a military transferred prisoner in violation of his Fifth Amendment right to equal protection and there is no rational basis for its actions." *Id.* at 6. In support of this claim, Lewis alleges that the BOP's method of calculating his parole-eligibility date treats military prisoners that have been transferred to a federal BOP facility (like Lewis) differently from those military prisoners confined at U.S. Disciplinary Barracks. *Id*. at 7. That is his textual statement, but Lewis quickly pivots to demanding that he, as a military transferee, receive treatment equivalent to persons convicted in civil courts. *See id.* ¶ 13(a). Because he claims that the BOP is not correctly calculating his "two-thirds" parole-eligibility date, he requests that the Court "ORDER the parole eligibility date to reflect the U.S. Parole Commission's standards, and ORDER the USBOP to stop discriminating against military

---

[1] Although presented as a "new" habeas petition, in reality, Lewis's petition appears to be more in the nature of an appeal of Judge Caldwell's dismissal of his case, as he specifically challenges many of the legal conclusions reached in her Memorandum Opinion and Order dismissing the *Bivens* complaint. *See* DE 1 at 12–14. However, Lewis did not appeal that dismissal, and the time for doing so has long since expired.

5

inmates." *Id*. at 8. However, as already determined by Judge Caldwell, there has been no violation of the equal-protection component of the Due Process Clause of the Fifth Amendment, as Lewis is not being treated any differently than similarly situated military inmates. *See Lewis v. Kizziah*, No. 7:17-cv-6-KKC, at DE 31. He is receiving the precise military justice sentence and treatment as a like military detainee would receive.

In the petition here, Lewis rehashes his theory that the BOP's enforcement of the September 2025 parole-eligibility date violates his rights under 10 U.S.C. § 858 and 18 U.S.C. § 4205. However, in her thorough, well-reasoned decision, Judge Caldwell rejected that argument and specifically found that neither Lewis's statutory nor constitutional rights were violated. *Lewis v. Kizziah*, No. 7:17-cv-6-KKC, at DE 31. Arguably, because Lewis's current pleading has been filed as a habeas case, rather than a civil-rights case, the causes of actions may be considered to be non-identical for res judicata purposes.[2] Even so, the Court takes judicial notice of the proceedings in *Lewis v. Kizziah*, No. 7:17-cv-6-KKC, particularly Kizziah's motion to dismiss (DE 25), Lewis's Response in Opposition (DE 27), and the Memorandum Opinion and Order (DE 31) granting the motion to dismiss and dismissing the case with prejudice. Lewis's habeas petition must be dismissed for the same substantive reasons that warranted dismissal of his earlier *Bivens* claim.[3]

---

[2] A claim is barred by res judicata "if all of the following elements are present: '(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the same parties or their 'privies'; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action.'" *Browning v. Levy*, 283 F.3d 761, 771–72 (6th Cir. 2002) (quoting *Bittinger v. Tecumseh Prods. Co.*, 123 F.3d 877, 880 (6th Cir. 1997)).

[3] This Court "may take judicial notice of proceedings in other courts of record." *Rodic v. Thistledown Racing Club, Inc.,* 615 F.2d 736, 738 (6th Cir. 1980); *see also* Fed. R. Evid. 201(b)(2).

According to Department of Defense ("DOD") policy regarding parole eligibility, "[i]n cases in which a prisoner is convicted of an offense committed after February 15, 2000, and has been sentenced to confinement for life, the prisoner must have served at least 20 years of confinement" before being eligible for release on parole. *See id.* at DE 25-2 (Attachment 2: Department of Defense Instructions (DoDI) 1325.07, Enclosure 2, § 18(a)(2)(c) (March 11, 2013)). Lewis concedes that: 1) he was sentenced by a military court after February 15, 2000; and 2) he was sentenced to confinement for life. *See* DE 1 at 11 (Statement of Fact). Thus, DOD policy on parole eligibility requires that he serve 20 years of confinement before being eligible for parole.

Lewis does not appear to dispute that, were he in military custody, the DOD policy requiring service of at least twenty years of confinement would apply to him. *See id.* at 4. Nor could he, on account of the indisputable clarity of the DOD policy. But according to Lewis, in light of his transfer to BOP custody, neither the BOP nor the USPC may rely on the parole-eligibility date provided by the USDB (determined pursuant to the DOD policy), but instead must apply the now-repealed federal parole statutes to determine his parole-eligibility date. *Id.* at 13–15.

It is not clear on which statute Lewis relies to calculate what he concludes is his parole-eligibility date of September 6, 2015. At one point in his petition, he claims that he should be eligible for parole after serving only ten years of his sentence in accordance with 18 U.S.C. § 4205(a), which—prior to its repeal—provided that "[w]henever confined and serving a definite term or terms of more than one year, a prisoner shall be eligible for release on parole after serving one-third of such term or terms or after serving ten years of a life sentence or of a sentence of over thirty years, except to the extent otherwise provided by law." 18 U.S.C. § 4205 (*repealed by* Pub. L. 98-473, Title II, § 218(a)(5), 98 Stat. 2027 (Oct. 12, 1984)). *See* DE 1 at 12. However, he later argues that his parole-eligibility date should have been computed pursuant to a formula for life

7

sentences provided by 18 U.S.C. § 4206(d), which provided that "[a]ny prisoner, serving a sentence of five years or longer, who is not earlier released under this section or any other applicable provision of law, shall be released on parole after having served two-thirds of each consecutive term or terms, or after serving thirty years of each consecutive term or terms of more than forty-five years including any life term, whichever is earlier." 18 U.S.C. § 4206(d) (*repealed by* Pub. L. 98-473, Title II, § 218(a)(5), 98 Stat. 2027 (Oct. 12, 1984)). *See* DE 1 at 15. Thus, under § 4206, he would be eligible for parole after serving thirty years of his life sentence.

Regardless of whether he relies on § 4205 or § 4206, Lewis's argument depends on his theory that 10 U.S.C. § 858(a) incorporates the federal parole-eligibility standards of 18 U.S.C. § 4202. *See* DE 1 at 13. However, Lewis continues to overlook that the Sentencing Reform Act of 1984 repealed both § 4205 and § 4206; these provisions yet only apply in cases where the crimes were committed before November 1, 1987, the effective date of the repeal. *See* 18 U.S.C. §§ 4201–4218, *repealed by* Pub. L. 98-473, Title II, § 218(a)(5), 98 Stat. 2027 (Oct. 12, 1984); *see also* 18 U.S.C. § 3551. Since a military court sentenced Lewis in 2006—well after the repeal of the federal parole statutes—neither § 4205 nor § 4206 applies to him.

Lewis relies upon 10 U.S.C. § 858(a) to bolster his argument. Section 858(a) provides:

> a sentence of confinement adjudged by a court-martial . . . may be carried into execution by confinement . . . in any penal or correctional institution under the control of the United States, or which the United States may be allowed to use. Persons so confined in a penal or correctional institution not under the control of one of the armed forces are subject to the same discipline and treatment as persons confined or committed by the courts of the United States or of the State, District of Columbia, or place in which the institution is situated.

10 U.S.C. § 858(a). According to Lewis, § 858's incorporation of the federal parole-eligibility standards of § 4205 and § 4206, and his transfer from military custody, render inapplicable the military parole-eligibility standards. DE 1 at 14–15. However, Lewis cites outdated law for this

proposition; for example, *King v. Federal Bureau of Prisons*, 406 F. Supp. 36 (E.D. Ill. 1976) and *O'Callahan v. Attorney General*, 230 F. Supp. 766 (D. Mass. 1964) both predate the Sentencing Reform Act, which repealed the federal parole statutes.[4] *See* DE 1 at 13–14.

In *Lewis v. Kizziah*, No. 7:17-cv-6-KKC, Judge Caldwell addressed the significance of *King*:

> Moreover, in *King*, a case in which the application of the federal parole eligibility standards of 18 U.S.C. § 4202 resulted in an increase in a military prisoner's minimum term of confinement, the Court held that there is no rational basis for the increase to his term of confinement based solely on a change in his place of confinement from a military to a federal prison. *King*, 406 F. Supp. at 39.
> The Court then explained[:] "Since there is no rational basis for calculating petitioner's parole eligibility pursuant to the statute applicable to federal prisoners, 10 U.S.C. § 858(a) is unconstitutional. It unconstitutionally discriminates against petitioner by denying him the same parole treatment provided to military prisoners who are not transferred to a federal penitentiary. To provide petitioner equal protection of the laws his parole eligibility must be calculated in the same manner as these prisoners. The Court therefore finds that petitioner's parole eligibility should be calculated pursuant to the Army regulation and that he is therefore eligible for parole after serving ten years." *Id.*

*Lewis v. Kizziah*, No. 7:17-cv-6-KKC, at DE 31 at 5.

Lewis argues that the failure to apply the repealed federal parole statutes to him amounts to unconstitutional discrimination against him by denying him the same parole treatment of

---

[4] Lewis also relies on *Holt v. Terris*, although he provides no citation for this opinion. Presumably, he intends to rely on *Holt v. Terris*, 269 F. Supp. 3d 788 (E.D. Mich. 2017), which held that, where a military prisoner is serving a life sentence, he may not use his Military Abatement Good Time ("MAGT") to advance the date that he will likely be released on parole. *Id*. at 789. Rather, "MAGT earned by a prisoner serving an indeterminate life sentence must be held in abeyance unless and until that prisoner's sentence is reduced to a determinate sentence." *Id*. Although the Court stated in passing that the USPC in *Holt* directed the BOP to calculate a "two-thirds" date for purposes of determining Holt's parole eligibility date (in an apparent reference to § 4206(d)), its reasons for doing so were not relevant to the Court's decision and, accordingly, were not further discussed by the Court. *See id.* at 789–91. Even so, because Holt was serving a life sentence, his "two-thirds" date calculated by § 4206(d) was 30 years from the start of his sentence. *Id*. at 790. Thus, applying *Holt*, Lewis (who is also serving a life sentence) would not be eligible for parole until 30 years from the start of his sentence, rather than the 20 years provided by the DOD Policy. This surely is of no appeal to Lewis.

9

ordinary federal prisoners. DE 1 at 15. But Lewis resists the reality that "ordinary federal prisoners" are, categorically, no longer entitled to parole. Additionally, Lewis compares himself to the wrong set of prisoners. In *King*, the Court identified as discriminatory the failure to treat the petitioner like other military prisoners who had not been transferred to a federal facility. *King*, 406 F. Supp. at 39. Applying *King* requires that Lewis's parole-eligibility date be determined by applying the same standards and policies applicable to other military prisoners not in BOP custody. Lewis's argument runs counter to the logic of *King*; as Judge Caldwell previously noted, "it would be discriminatory to find that Lewis should be eligible for parole significantly sooner than other inmates remaining in military custody simply because he was transferred to a BOP facility." *Lewis v. Kizziah*, No. 7:17-cv-6-KKC, at DE 31 at 6. Moreover, to the extent Lewis argues that his parole-eligibility date should be determined pursuant to § 4206, because he is serving a life sentence, he would not be eligible for parole under § 4206 until he had served thirty years of his sentence, rather than the twenty years provided by the DOD Policy. Finally, of course, the BOP defers to the USDB calculation; that results, here, in Lewis being treated exactly like military prisoners not transferred to the BOP. In other words, Lewis gets the precise equality his petition pursues. He most assuredly does not want equal treatment relative to BOP civil system convicts from the same period; that set has no eligibility for parole.

Lastly, Lewis repeatedly suggests that neither the BOP nor the USDB have any role to play in calculating his parole-eligibility date, in light of the USPC Manual, which provides that "[p]risoners sentenced by military courts-martial and then transferred to a federal institution come under the exclusive jurisdiction of the United States Parole Commission for parole purposes." United States Parole Commission Rules and Procedures Manual, 2.2-03 Military Prisoners,https://www.justice.gov/sites/default/files/uspc/legacy/2010/08/27/uspc-

manual111507.pdf. Judge Caldwell likewise addressed—and rejected—Lewis's theory on this point:

> However, this grant of exclusive jurisdiction does not preclude the USPC from deferring to the BOP with respect to calculation of the parole eligibility date. As noted by Defendant[] [in the motion to dismiss Lewis's *Bivens* complaint], the USPC, [] an agency of the Department of Justice ("DOJ"), is not declining jurisdiction; rather it is electing to defer to the BOP, another DOJ agency, with respect to the determination of the parole eligibility date.

*See Lewis v. Kizziah*, No. 7:17-cv-6-KKC, at DE 31 at 6; *id.* at DE 25 at 4–5; *see also Gomez v. U.S. Parole Comm'n*, No. CIV. 05-3829 (RBK), 2006 WL 2465628, at *7 (D.N.J. Aug. 19, 2006), *aff'd*, 246 F. App'x 102 (3d Cir. 2007) (noting that "[t]he USPC relies on the BOP to compute a federal prisoner's sentence, which would include certain dates pertinent to the USPC's activities, such as, the parole eligibility date, the two-thirds date, and mandatory release date, but it is the USPC that makes the substantive determination as to whether parole should be granted").

Judge Caldwell continued: "In turn, the BOP defers to the Records Office of the U.S. Army Disciplinary Barracks in Fort Leavenworth, Kansas, with respect to military sentence computations." *See Lewis v. Kizziah*, No. 7:17-cv-6-KKC, at DE 31 at 6; *id.* at DE 25-3 (Attachment 3: BOP Program Statement 5110.16(4) (Sept. 13, 2011)) (noting that the BOP "must accept the sentence computation provided by military authorities, and refer suspected errors, or challenges to the sentence computation by the inmate, to the military Records Office for resolution."). Because a military court, rather than a civilian court, sentenced Lewis, "this deference is entirely appropriate." *See id.* at DE 31 at 7.

For all of these reasons, the Court finds that it plainly appears from Lewis's petition that he is not entitled to relief based on the § 2241 petition filed in this Court, as he has failed to demonstrate a violation of his constitutional rights in connection with the calculation of his parole-eligibility date. The sound analysis of Judge Caldwell, from the prior iteration, abides.

Accordingly, the Court **ORDERS** as follows:

1. The Court **DENIES** DE 4, Lewis's motion for change of venue;

2. The Court **DENIES** DE 1, Lewis's petition for a writ of habeas corpus;

3. The Clerk **SHALL** dismiss this matter and strike it from this Court's active docket; and

4. The Court will enter a corresponding judgment this date.

This the 22nd day of October, 2019.

Signed By:
*Robert E. Wier* REW
United States District Judge